## HEFFELFINGER *v.* FULTON.

[No. 3,039. Filed March 8, 1900. Rehearing denied June 6, 1900.]

TRESPASS.—*Ejectment.—Master and Servant.—Landlord and Tenant. —Forcible Entry and Detainer.*—Where plaintiff occupied a house and appurtenances as a part of the contract price for services to be performed by him as a farm hand, the relation of master and servant, and not that of landlord and tenant, existed, and when, for any cause, his contract of employment was ended, his rights in the premises ended, and an action could not be maintained by him against the owner of the premises for forcible ejection. *pp. 34-37.*

SAME.—*Ejectment.—Master and Servant.—Landlord and Tenant.— Forcible Entry and Detainer.*—Section 7118 Burns 1894, relative to forcible entry and detainer, is not applicable to a case where the relation between the landowner and occupant is that of master and servant. *pp. 37, 38.*

From the Wells Circuit Court. *Affirmed.*

A. N. *Martin* and W. H. *Eichhorn,* for appellant.
J. S. *Dailey,* A. *Simmons* and F. C. *Dailey,* for appellee.

HENLEY, J.—The appellant was the plaintiff in the lower court. His complaint avers that under a contract with appellee he was put into possession of a certain dwelling-house, out buildings, dooryard, and garden appurtenant thereto, and was to have and hold possession of the same until February 27, 1898; that on the 1st day of July, 1897, while he and his wife and children were peaceably and lawfully residing on said premises pursuant to said contract, appellee unlawfully and forcibly entered said dwelling-house, and over his, appellant's, objection and protest, unlawfully and forcibly ejected appellant and his family from said premises, and unlawfully and forcibly took possession of said premises, and retains possession thereof; that appellee unlawfully and forcibly took possession of appellant's furniture, and removed the same from said dwelling-house, and placed it in the public highway,—all without the consent of appellant; that appellant was put to an expense of $50 in finding another house in which to move; that he was damaged in the sum of $100 by the loss of the said premises; that appellee damaged appellant's carpets and furniture in removing them from said dwelling-house; that appellant and his wife and children were greatly humiliated, and suffered great mental anguish by reason of acts of appellee aforesaid; that appellant was compelled to remove his chickens from said premises at a time when the weather was excessively warm, and by reason thereof said chickens were damaged; that, by reason of all of said acts of appellee, the appellant has been injured in the sum of $500, and he asks judgment for said amount, and for a writ of restitution of said premises.

To appellant's complaint appellee filed an answer in five paragraphs. The fifth paragraph of answer, omitting the

caption, was as follows: "And for fifth and further paragraph of answer to plaintiff's complaint, the defendant avers that the plaintiff was occupying said dwelling-house mentioned in the complaint and all the appurtenances thereto belonging, together with the dooryard and garden and truck patches mentioned in the complaint, as a farmhand of this defendant; and that all of said possessions were held by him merely as a farm-hand, to better enable him to work on said farm as the farm-hand of this defendant, and all of said possessions were connected with the employment of said plaintiff by this defendant as a farmhand, and were held as a part of his compensation for his labor upon said farm as a farm-hand of this defendant. And this defendant further avers that said possession of all of said premises mentioned in the complaint by the plaintiff was the possession by this defendant for the reason that it was held by the plaintiff as a part of his employment as a farm-hand, and was connected with his said employment. And the defendant further avers that in removing said furniture from said house reasonable care was used, and no damage was done said furniture; and the defendant further alleges that in removing the carpet from said floor reasonable care was used, and that said carpet was not torn or damaged by removing the same from said floor. Wherefore, the defendant says the plaintiff ought not to recover." Appellant's demurrer to this paragraph of answer was overruled. The cause was put at issue by appellant's reply; it was submitted to a jury for trial, and a general verdict returned in favor of appellee.

Appellant's sole contention is that the lower court erred in overruling the demurrer to the fifth paragraph of answer. Counsel for appellee insist that the fifth paragraph of answer presents a case where the relation created between the appellant and appellee was that of master and servant, and the rights appellant had under the contract were the rights of a servant only; that the relation of landlord and

tenant never existed in this case; that the use of the house to live in and of the appurtenances thereunto belonging were mere incidents to the employment, and that the possession was at all times the possession of appellee, the master. If counsel are correct in their contention that the facts averred in the answer create the relation of master and servant between the appellee and appellant, the answer is sufficient, because, this being an action for damages for trespass, it would not lie, unless appellant had either possession, or the right of possession, and a servant who has neither could not maintain the action against the master who has both. Under the averments of the answer, appellant occupied the house and appurtenances as a part of the contract price for the services to be performed by him, and when for any cause his contract was ended, his rights in the premises end. See *Fulton* v. *Heffelfinger,* 23 Ind. App. 104. The question as to whether appellant was unlawfully discharged under his contract does not arise upon the demurrer to the answer. The case of *Bowman* v. *Bradley,* 151 Pa. St. 351, 17 L. R. A. 213, 24 Atl. 1062, decided by the supreme court of Pennsylvania, is in all respects like the case at bar. In that case, it was said: "The subject of this contract was labor. Labor was what Bradley needed and undertook to pay for. It was what Bowman undertook to furnish him at an agreed price. The labor was to be performed upon the land in its cultivation, in the care of the cows, and the delivery of the milk. As Bowman was not a cropper, or a tenant paying rent, his possession of the land and the cows, and the implements of farm labor, was the possession of his employer. The barn was used to stable the cattle and store their feed. The house was a convenient place for the residence of the laborer. The house, the barn, the land, the cattle, the farming tools were turned over into the custody of the man who had been hired to care for the property; but he had no hostile possession, no independent right to possession. His possession was that of the owner whom he rep-

resented, and for whom he labored for hire. * * * The case seems to have been begun, and tried, by the plaintiff on the theory that his right to the possession of the house was superior to his right to remain in the defendant's service; and that while his employer might dismiss him from the one at any time, he could not oust him from the other until the expiration of one full year. Such a theory can not be sustained by proof of a contract for labor at a fixed price per day and a house to live in. It can only be supported by proof of a contract for one year's occupancy of the house. Both parties agree that the contract in this case was one of hiring. There is no pretense of a separate lease for the house. The compensation for its use was in the labor to be performed on the premises. When the labor ceased on the 19th of July, the plaintiff ceased to pay for his occupancy. * * * It is not necessary that occupancy of a house, or apartments, should be a necessary incident to the service to be performed in order that the right to continue in possession should end with the service. It is enough if such occupancy is convenient for the purposes of the service and was obtained by reason of the contract of hiring." To the same effect, see *Kerrains* v. *People*, 60 N. Y. 221; *State* v. *Jewell*, 34 N. J. L. 259; *Haywood* v. *Miller*, 3 Hill 90; *Lightbody* v. *Truelsen*, 39 Minn. 310, 40 N. W. 67; *Fulton* v. *Heffelfinger*, 23 Ind. App. 104.

In the case of *Chatard, Bishop,* v. *O'Donovan*, 80 Ind. 20, the Supreme Court held that the relation existing between the bishop and a priest appointed by him was that of master and servant. That the possession of the parsonage and other real property occupied by the priest incident to his appointment was the possession of the bishop, who had power at any time to remove the servant, and install another in his place and in the possession of the property of the office. In such a case, the relation of landlord and tenant can not exist.

Section 7118 Burns 1894 is relied upon by appellant.

This statute is not applicable in a case like this. In every case covered by the statute *possession* is contemplated. Whether that possession be lawful or unlawful, or however acquired, it does not matter, the section cited is applicable. It does not apply to a case where there is not, and cannot be, possession in the occupant. It cannot apply to a case like the one under consideration, where, by contract, the relation assumed between the landowner and the occupant is that of master and servant. Appellant had no possession. His possession was that of appellee, his employer. It could not survive the contract of hiring, to which it was incidental, and under which it was a part of the price for services to be performed by appellant. When appellant's contract was canceled, his right to occupy the premises terminated. As was said in *Bowman* v. *Bradley,* 151 Pa. St. 351: "His right under the contract of hiring was like that of the porter to the possession of the porter's lodge; like that of the coachman to his apartments over the stable; like that of the teacher to the rooms he or she may have occupied in the school building; like that of the domestic servants to the rooms in which they lodge in the house of their employers."

The fifth paragraph of answer averred facts which amounted to a complete defense to the complaint. There was no error in overruling appellant's demurrer thereto. Judgment affirmed.